Shugats *v.* Metropolitan Life Insurance Company, Appellant.

Argued April 22, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Paul M. Robinson,* with him *Marker & Rial,* for appellant.

*A. C. Scales,* of *Scales, Loughran & Shaw,* for appellee.

OPINION BY HIRT, J., July 16, 1943:

Plaintiff is the beneficiary of a policy of insurance written by defendant on the life of her son Joseph Shugats. The policy was issued October 1, 1939; insured died little more than two months later on December 11, 1939, of diabetes. The jury found for plaintiff and judgment was entered on the verdict. Defendant seeks a new trial on the ground of false and fraudulent representations in the written application for the insurance attached to the policy.

Insured was a boy sixteen years of age. In the application it appears that, to the question: "Have you ever had ...... diabetes?", he answered: "No illness

whatsoever." In answers to other material questions he represented that his physical condition was "healthy"; that he had not been treated by nor had he consulted a physician within five years; that he had had no prior sickness and had not been absent from school for illness. In the absence of proof of the contrary it must be presumed that the contract was made in reliance on these representations. *N. Y. Life Ins. Co. v. Brandwene,* 316 Pa. 218, 172 A. 669.

The evidence is that insured had consulted Dr. Milton Mermelstein at his office on January 25, 1939. So much is admitted. This witness testified further that the boy was then very sick and complained of "severe weakness." A urinalysis disclosed "plus four", a high sugar content. He was put on a diet restricting sugar and starches. In February 1939 when a second examination indicated that there was no change in his condition he was directed to take ninety units of insulin a day and on March 7, 1939, when last seen by Dr. Mermelstein he was still suffering from diabetes. In the opinion of this witness the boy was unable to attend school in his then physical condition. The school records show that he was absent from January 17, 1939 to the close of the term in June but that he did attend intermittently when the school opened in the fall.

Notwithstanding this evidence the issues whether the representations were false and insured knew them to be false when he made them, were for the jury and the burden of proving falsity and bad faith was on the defendant. The rule is: "Whenever disputed questions of fact are presented by conflicting evidence, whether documentary or oral or whenever the insurer's defense depends upon the testimony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury . . . . . .": *Evans v. Penn Mutual L. Ins. Co.,* 322 Pa. 547, 186 A. 133. (For this reason, defendant, in any view, is not entitled to judgment n.o.v.) The above rule is for the benefit of the insured and his

beneficiary, to prevent an insurer from avoiding the just obligation of its contract. The liberality of the rule however is an invitation to the unscrupulous to pervert its salutary purpose. Courts, therefore, must be assiduous in seeing to it that a beneficiary may not reap benefit from fraud perpetrated by an insured in obtaining an insurance contract. There is an admonition to this effect addressed to the trial courts in this language of the *Evans* case following the above quoted rule: "...... subject to the trial court's power to award a new trial as often as in its sound discretion it may think the interests of justice require."

It is doubtful that there are trial errors in the record of this case which compel an award of a new trial on that ground. But there are circumstances which cast more than the shadow of suspicion on the integrity of plaintiff's claim. Dr. Mermelstein was a frank witness and his testimony is credible. Insured certainly knew whether he had consulted him and had received treatments within eight months of his application for insurance. If his answers had been truthful an investigation would have established the fact that he was suffering from diabetes and the policy would not have been written. Claimant on the trial attempted to avoid the inference of fraud by the testimony of a sister of insured, which is far from impressive. She testified that she was present when the written application was made and that the only questions asked by defendant's examiner related to insured's age, height and weight; that the answers to these questions and none others were filled in on the application when insured signed it. Her testimony goes too far and puts an undue strain on credulity. Answers to all questions appear on the written application in the same handwriting. Insured was a high school student and could read. It is admitted that he signed the application, and above his signature appears the following: "I hereby certify that:

"(1) I have read the answers to the questions ......
before signing, (2) they have been correctly written,
as given by me, (3) they are *full, true and complete,*
and (4) there are no exceptions to any such answers
other than as stated herein." (Italics added.) De-
fendant's counsel did not object to this testimony; it
was not competent, and if he had, it would not have
been received. *Anastasio v. Met. Life Ins. Co.,* 149 Pa.
Superior Ct. 414, 27 A. 2d 510; *Kasmer v. Metro. Life
Ins. Co.,* 140 Pa. Superior Ct. 46, 12 A. 2d 805. The
examiner who took the application and witnessed the
signature was in the army at the time of trial and was
not available to rebut the testimony of the sister. Under
the charge of the trial judge the jury may have found
absence of fraud solely on the testimony of that wit-
ness.

Defendant, we think, was unduly prejudiced in other
respects. Dr. W. H. Chambers was called on December
10, 1939 and found insured semi-delerious. He moved
him to a hospital where he died the next day. Because
of a marked congestion of the chest Dr. Chambers first
reported the cause of death as lobar pnuemonia but
later, when he had a full history of the case, corrected
the report to show death from diabetes. The trial judge
excluded the hospital record. Ordinarily such records
are admissible. *Freedman v. Mut. Life Ins. Co. of N. Y.,*
342 Pa. 404, 21 A. 2d 81; *Loder* v. *Metro Life Ins. Co.,*
128 Pa. Superior Ct. 155, 193 A. 403; *Anastasio* v.
*Met. Life Ins. Co.,* supra. The hospital record is not
before us and we are unable to pass upon the validity
of the ruling. The record proved by the custodian was
excluded as a whole because of erasures and she was
not allowed to testify from her own knowledge as to
circumstances under which the changes were made.
The alternations were confined to the "admission sheet."
If this sheet contained only such preliminary informa-
tion as was required for admission of the patient, the
hospital record proper showing the history of the patient

after his admission would be admissible as a record independent of the admission sheet. The court ruled this out on the ground that it was not the entire record. In any view, the circumstances under which the change was made could have been proven and the whole record made admissible. Mary O'Branich was supoenaed as a witness by defendant. She was ill and was not able to appear. Defendant in the course of the trial offered to prove by her that she administered injections of insulin to the insured over a period. An application to the trial judge for an order to take her deposition on a short rule was denied.

Under the Act of June 24, 1895, P. L. 212, §8, par. 8, 17 PS 192, our powers are broad. It is there provided that this court "may affirm, reverse, amend or modify any order, judgment or decree as it may think to be just, or it may return the record for further proceedings in the court below." It was not intended that we should usurp the function of the trial court in matters exclusively for it. But we are all of the opinion that a new trial should have been granted by the court below and that this case presents a proper occasion for our doing what should have been done.

The judgment is reversed and a new trial granted.